Hatch, J. (dissenting.)
Plaintiffs are owners of property fronting on Water street and by this action seek to recover damages for the appropriation of the street to railroad uses. The facts are brief and have been before the court under varying circumstances and cases many times. The fee of Water street was acquired by the city of Buffalo by proceedings in invitum under and by virtue of title VIII, chap. 519, Laws, 1870. In 1882 the defendant made *740 application to the common council of said city for leave to construct and operate its railroad through several streets therein. The council granted such permission pursuant to a resolution which so far as material here is as follows: “That permission be and hereby is granted to the New York, Lackawanna & Western Railway Company to lay and maintain two railroad tracks from the easterly line of the City of Buffalo northerly of William St. and where the route of said road, as laid down upon the map thereof filed in the office of the clerk of the county of Brie, crosses such city line to the points' hereinafter mentioned and to cross with such tracks * * * upon the line and at the grade specified upon the map and profile of the route of such company filed in the office of the clerk of Erie county, May 19,1881, and thence proceeding westerly * *. * across Main street, and through the block to Prime street; thence along the northerly line of Prime street, but so that no part of the track shall be in Prime street; thence across Lloyd street, at a grade not to exceed five feet above established grade of street, and construct crossing of a grade not to exceed three feet to the 100 feet, under the direction of the engineer; thence to and into and along the center of Water street to the docks of the Delaware, Lackawanna & Western Railroad Company, at the foot of Brie ¡¡street, said company is. further authorized to cross at grade * * * Maiden Lane on the line between Commercial and Brie streets, as laid down upon the map so filed in Brie county clerk’s office.”
■ This grant was made subject to the following conditions, among others:
“ Second. That whenever said tracks cross at grade, and are laid within a street, such company shall cause the space between its exterior rails to be paved or planked, and shall cause such pavement or planking to be kept in repair.
“ Third. That such tracks, westerly of the junction of Ohio and Blk streets, shall be so laid that the top of the rail shall be flush with the pavement, so as not to obstruct travel in such streets.” That portion of the road lying westerly of the junction of Ohio and Blk streets includes Water street." Under and by virtue of this resolution and its charter, granted by the state, defendant proceeded to construct its road. At a point west of Lloyd street it was necessary to cross Commercial slip, a part of the Brie canal; the elevation .at which it should cross was fixed by the state authorities pursuant to law, chapter 276, Laws 1834, § 16, in accordance with which the height was fixed at fourteen feet above the water level. This necessitated a change of grade and a rise in the streets each, side of the bridge, and resulted, in Water street, in the railroad starting at grade west of the slip and gradually rising until it crosses the slip. The structure which thus changed the grade is built of solid walls of masonary on either side, with filling between, upon which the rails are laid and the whole surface is paved. Its length in Water street is 300 feet, its width twenty-four feet, and its greatest heighth five feet and nine inches.
It is liot contended but that this raised structure is made neces *741 saiy in order to cross Commercial slip at the established height fixed by the state, but it is insisted that defendant acquired no right whatever to erect the structure or change the grade in Water street, either by grant of the council or otherwise; that all authorization to lay tracks or operate a road west of Main street was stricken from the prevailing resolution. • The record discloses, by inference, that the subject matter had previously been -before the council, and that it had been the subject of consideration by the committee on streets. When the matter was taken up by the council, a substitute resolution was offered for the report of the committee on streets, and forms the basis of authority acted upon by defendant. The particular thing relied on by plaintiff relates to a resolution offered, which provided that all of the prevailing resolutions relating to that portion of the route west of Main street should be stricken out, as the same had previously been adopted. This amendment was adopted, but was immediately reconsidered, and then left without further action, so that it found no place in the resolution as finally passed. Subsequently a resolution was passed which fixed the grade across Lloyd street. Numerous other amendments were offered, some of which were adopted and some ^ejected, but none affecting the particular matter here, except those stated. The resolution was then adopted, and, so far as material now, is the one quoted. It is seen from this that the reference to the construction of the road lying west of Main street, so far from being stricken out, remained, that the grade was established at the crossing of Lloyd street where it approached Commercial slip at five feet, thus modifying the original substitute for the report of the committee, which had provided that the grade should be such as was necessary, in practical construction, to meet the grade fixed by the state engineer at the crossing of the slip. It is true that no mention of the grade in Water street is made, in words, in the resolution, but it authorizes its construetion there, in accordance with a certain profile and map, which showed the grade, then on file, and, according to the testimony, the grade now there is in accordance with such profile and map. If, however, there was this absence, the resolution having provided for the crossing of the bridge into Water street, and the construction of the road therein, it will not be assumed that a valueless grant was made, and as the road could not approach or leave the bridge except an approach be constructed for it, such construction, in the absence of statutes prohibiting it, will be presumed to exist as an essential incident to the grant Slatten v. Railroad Company, 29 Iowa, 148.
The contention, therefore, that no grant was made cannot be upheld. It is farther insisted upon that even though the construction of the road in Water street be authorized, yet, that it is not constructed in accordance with the grant made. The particular defect insisted upon is, that the resolution authorized the crossing of Maiden Lane at grade, while it appears that at the east line of Maiden lane it is two feet above grade. It would be sufficient in answer to say that the record nowhere shows the point where the railroad starts to leave the grade, and whether east or west of *742 Maiden Lane. Doubtless the maps used and introduced in evidence upon the trial disclosed this fact, but they are not made a part of the present record. If it were otherwise, the testimony is to the effect that the roadway, as it now exists; is constructed in every respect with the profile and map on file; that it was inspected by the city engineer and approved of by him. The resolution provides that the crossing shall be made at this point at grade, as laid down upon the map filed, and it will not be assumed that inconsistent grants were made. As to the present grant, and structure, the map and profile provide for it, and the city authorities have given a practical interpretation to the resolution through its constituted authorities, that the present construction is in accordance with the grant. Claim is also made that the proceeding taken by the city to acquire the fee of Water street is-void. It is not contended but that the legislature authorized the city to acquire the fee of the street; that the proceedings taken in conformity with such acts are in all respects regular, and that they were confirmed by judgment of this court. Whatever may have been the reasons which induced the city to acquire the fee, and however inadequate may have been the sums awarded for the property rights taken, we are confronted with the condition that a proceeding taken in conformity to law has resulted in a judgment which is in all respects conclusive in this action. Matter of Ferris, 10 N. Y. State Rep., 480, affirmed at general term. Mss. Opinion Smith J., not reported. The claim is further made that if the proceedings referred to are in all respects regular, the council has no power to authorize the change of grade by the proceedings taken; that it is in no sense a change of grade, but an appropriation of the street. So far as the latter question is concerned it will be hereafter noticed.
By title 3, § 19, the council is authorized, by a vote of twothiras of all its members elected, to permit the track- of a railroad to be laid in, along or across any street; the vote in the council by which the resolution awarding the grant was passed shows that the required number authorized it; this authorized the construction of the road in Water street, unless some prohibition exists. The latter is claimed, and we are referred to §§ 2, 7 and 8, title 9, charter of the city of Buffalo, for its support. The first of these sections provides for the establishment of the grade of a street, its description and alteration, which shall be recorded with the city clerk. The others provide for grading, and so forth, of streets, and the course of procedure in changing the grade, by which it appears that three-fourths of all the members elected must vote for the proposed change, when the sum to be expended shall exceed $500, and there must also be notice of intention published three times a week for three weeks, or the regrading must have been applied for by a majority of resident owners whose lands front on the street, etc. The evident object and purpose of these sections is to give the land owner an opportunity to be heard whenever any proceeding is taken which results in imposing a burden upon his property by way of taxation, and this is essential to meet a constitutional requirement, if the moving party is *743 the city, through the common council, and the cost exceeeds $500, then notice of intention must be published; if the owners are the movers, then no such notice is necessary to give the council jurisdiction, as the minority who do not petition are protected in the right to be heard at the time the tax is laid, for by § 10 of the charter the cost of such improvement is to be borne by local assessment, and other provisions provide for notice. It is quite evident to my mind that these sections have no connection with or application to the power vested in the council to authorize the use of streets for railroad purposes. The only limitation in the section granting the power is in the required' two-thirds vote. The sections referred to as a limitation upon the power have application alone where the cost of the work is to be borne by local assessment and exceeds $500. When the right to use a street is vested in the railroad no burden of taxation upon the lands fronting thereon is authorized or contemplated, all cost and expense incident to the grant is borne by the company, so that whether the cost of the work imposed upon the company is great or small is not of the slightest consequence to the lot owner, as he bears no share of it, and consequently the provisions passed to protect him in this regard fail for want of application to such a case.
It is urged that the-right is not limited to purposes of taxation, but embraces the right to be heard with respect to damages inflicted upon adjoining property as incidental to the change. It is to be noticed that the sections of the charter referred to are silent in this regard, and such construction must embrace something not expressed in words and I think not intended. This view seems conclusive from the fact that by § 17 of the same title provision is made that the lot owner, within one year after the improvement or change, may present his claim to the city and have his damages assessed, and this without reference to the cost of the work. Thus a complete and harmonious system is established. Hirst, the council has the right to order the change. Second, if the cost of the work to be assessed upon the lot owners exceed $500, notice must be given or petition made. Third, if any lot owner be damaged by the improvement, whether ordered by the council with or without notice, or upon petition, such damage is to be measured upon application by the lot owner. This system seems to protect the owner in any contingency, imposes no burden without; a right of hearing, and when damage results, provides a remedy. I see in all this no limitation upon the power of the council to make the grant and authorize the change. It is further said that before the grant becomes effectual the grade must be established and recorded. If this be so, I think the grade was sufficiently established in the. resolution authorizing the construction, for the map and profile on file clearly showed it; if there .has been failure to record, it cannot vitiate the action taken for that was alone a clerical act, directory in its character; and can be complied with at any time. People ex rel. v. Haupt, 104 N. Y., 377; 5 N. Y. State Rep., 770.
What effect such omission may have, if any, upon the right to make application for damages, it is not now necessary to deter *744 mine. The views herein expressed find support in Ottenot v. R. Co., 28 14. Y. State Rep., 483; Conklin v. R. Co., 102 N. Y., 107; 1 N. Y. State Rep., 677; Briggs v. R. R. Co., 79 Me., 363; Wolfe v. R. R. Co., 15 B. Mon. (Ky.) 404; Slatten v. R. R. Co., supra.
Finally it is claimed that there has been no change of grade of the street in any sense, but that there has been an utter destruction of the street, and a complete appropriation of it to railroad uses. The doctrine announced in Story v. Elevated R. Co., 90 N. Y., 122, is cited and relied upon to support the contention. This case has recently been the subject of re-examination and'limitation by the court of appeals. Fobes v. The R., W. & O. R. R. Co., 31 N. Y. State Rep., 828.
It is there held that the Story case did not intend, nor did it overrule any principle of law which had previously existed, but that it simply made application of established principles of law to facts in a new combination. Judge Peclcham says: “ Such facts amounting, as was- determined, to an absolute and permanent obstruction in a portion of the. public street, and in a total and exclusive use of such portion by the defendant, and such permanent obstruction and total and exclusive use, it was further-held, amounted to a taking of some portion of the plaintiff’s easement in the street for the purpose of furnishing light, air and access to his adjoining lot.” And again, referring to the property taken, the learned judge says: “ But this taking, it cannot be too frequently or strongly asserted, resulted from the absolute, exclusive and permanent character of the appropriation of the street by the structure of the defendant.” Referring to ’ the rule-applicable to surface steam railroads, the learned judge says; “For many years prior to the decision of the case of Story * * * I think the law was that a duly incorporated railroad company having authority from the state to build its road, and laying its tracks and operating its road through and upon the surface of the streets of a city under the protection of a license from such city, took thereby no portion of the property of an individual who owned land adjoining the street, but bounded by its exterior line. The company was, therefore, not liable to such an owner for any consequential damages to his adjoining property arising from a reasonable use of the street for railroad purposes not exclusive in its nature and substantially upon the same grade as the street itself, and leaving the passage across and through the street free and unobstructed for the public use.” This case, taken with the case of Ottenot v. Railway, supra; Conklin v. The Railway, supra, and the Story case, seem to settle the law of the present case. As applicable here we find that this embankment is not an absolute and exclusive appropriation of the street; it still remains open upon each side for street purposes, as it always existed; there is no proof to show that the surface of the embankment is 'not passable for vehicles and the ordinary uses to which a street is put, or that the use by defendant has been unreasonable or degenerated into a nuisance, or been exclusive in any sense beyond such as ordinarily attaches to the use of steam motive power on the surface of a street.
*745 On the contrary the proof is that the rails are laid flush with the pavement of the street, that the surface is paved as an ordinary street, that it is accessible from the point where it commences to rise above grade for the usual traffic of a street, that at its highest point approaches for foot passengers and teams have been built. Those facts all rebut the contention that the use of the surface of the street is absolute and exclusive by the road. It is quite clear within the authorities that the damage suffered is such as is consequent upon the changed grade, and not such as arises from the absolute and exclusive use of the street by the railroad or its structure; it seems, therefore, to fall outside the Story case, and allies itself to the principle announced in the Fobes case. If these views are correct, it follows that the judgment appealed from must be reversed, and a new trial ordered, costs to abide event
Judgment affirmed.
Beckwith, Ch. J., for affirmance; Titus, J., did not sit